45 N.J. Super. 230 (1957)
132 A.2d 311
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BENJAMIN PETROLIA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 15, 1957.
Decided June 3, 1957.
*231 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Archibald Kreiger, Deputy Attorney-General, argued the cause for plaintiff-respondent (Mr. Charles S. Joelson, Deputy Attorney-General, Acting Passaic County Prosecutor, attorney).
Mr. Ervan F. Kushner argued the cause for defendant-appellant (Mr. Isadore Waks, attorney; Mr. Robert Kleiner, on the brief).
The opinion of the court was delivered by FRANCIS, J.A.D.
Appellant was convicted of armed robbery. His previous conviction of the same offense was reversed for error in admitting a purported confession. State v. Petrolia, 21 N.J. 453 (1956). The present appeal is predicated upon an alleged error in the charge of the trial court on the subject of flight by an accused, and on asserted improper limitation in the cross-examination of a self-confessed accomplice.
The record discloses that Petrolia was arrested and charged with the crime on August 7, 1950. He was released in *232 substantial bail and shortly thereafter disappeared. Four years later he was located in Chicago where he was living and working under an assumed name. Extradition was waived and he was returned for trial. The explanation given at the trial for his departure was not persuasive.
In charging the jury on the subject the court said:
"There has also been brought out in the testimony the fact that the defendant, Benjamin Petrolia, left the jurisdiction of the State of New Jersey and went to Chicago, Illinois, and there changed his name, while he was under bail, and that he was picked up there about four years later on a fugitive warrant. In the law that is what is known as flight. The courts have held that flight does not carry with it a rebuttable presumption of guilt, because there can be no presumption of guilt in a criminal matter, and is merely a circumstance which may tend to show consciousness of guilt, which should be weighed by the jury with all other facts and circumstances. Unexplained flight by a person charged with crime is sufficient to raise an inference of guilt."
The asserted objection thereto was as follows:
"The next point, your Honor, is number 9. Your Honor has correctly charged the law of flight as far as your Honor went, but your Honor did not say as requested, and as is proper to charge, that he gave an explanation for the flight, namely, fear of a repetition of the police brutality."
Obviously, the criticism has to do with the failure to discuss the factual explanation given by the defendant for leaving the State and the failure to charge request number 9 in that connection as presented by the defense. The text of the request makes plain this conclusion. It is:
"9. Flight by a person accused of crime, when unexplained, raises an inference or presumption of guilt. Such inference or presumption is rebutted by the defendant's testimony that he left the State of New Jersey because he feared a repetition of the specific brutality inflicted upon him by the Paterson Police, as put in evidence by the defendant and his witnesses."
Manifestly it would not have been proper to instruct the jury as a matter of law that the defendant's explanation of his flight "rebutted" the "inference or presumption of *233 guilt" which, according to his own request to charge, arose from his departure from the State. The probative force of the defendant's explanation, of course, was a matter for jury determination. And it is significant to note that refusal to charge this request is not made a ground of appeal.
When the objection was made and request to charge number 9 was referred to, the court said:
"Well, I did not need to charge that. I left it up to the jury to decide whether there was an explanation or not.
Mr. Bozza: Otherwise, it is a most commendable charge."
Now defendant argues that prejudicial error was committed when the jury was told that unexplained flight is sufficient to raise an "inference" of guilt. Patently no objection of that nature was interposed. In fact, defendant asked the court to charge that such flight raises "an inference or presumption of guilt." The word "presumption" has a more unfavorable impact than the words actually used. See State v. D'Amato, 26 N.J. Super. 185 (App. Div. 1953).
The earlier cases on the subject of unexplained flight say that it raises "some presumption of guilt akin to the presumptions deemed to arise upon the fabrication of false evidence, or the suppression of true evidence." State v. Jaggers, 71 N.J.L. 281 (E. & A. 1904); State v. Harrington, 87 N.J.L. 713 (E. & A. 1915). Later ones say that it raises "an inference" of guilt. State v. Menzel, 136 N.J.L. 233 (Sup. Ct. 1947), affirmed per curiam 137 N.J.L. 616 (E. & A. 1948). And the latest expressions of the doctrine seem to be that such flight "is a circumstance tending to prove consciousness of guilt." State v. Centalonza, 18 N.J. Super. 154, 161 (App. Div. 1952); State v. D'Amato, supra, 26 N.J. Super. 188. In fact, in D'Amato a flat statement that flight "carries with it a rebuttable presumption of guilt" was declared prejudicially erroneous. In our judgment the preferable instruction to the jury, and the one which accords to a greater extent with the theory of criminal trials, is that which speaks *234 of unexplained flight as a circumstance tending to prove a consciousness of guilt. 20 Am. Jur., Evidence, § 293, at 274 (1939). However, it cannot be said that the use of the term inference of guilt in the context of the charge constitutes error.
The point pursues another tack. The suggestion is that when the court said: "In the law that is what is known as flight," in effect he charged as a matter of law that the defendant on the facts proven was guilty of the type of flight which gives rise to an inference of guilt. We do not think such an interpretation is warranted.
It will be noted that the charge first outlined expressly and by implication the facts relied upon by the State, namely, that after Petrolia had been arrested, charged with the crime and released on bail, he left the jurisdiction, went to Chicago, changed his name and four years later was apprehended there on a fugitive warrant. Then in effect the court said that accepting those facts "that is what is known as flight." In view of the language which followed, it would be hypercritical to say that prejudice resulted from the characterization of those specific facts as flight. The statement continued that flight (meaning the departure under the circumstances stated) "does not carry with it a rebuttable presumption of guilt, because there can be no presumption of guilt in a criminal matter, and is merely a circumstance which may tend to show consciousness of guilt, which should be weighed by the jury with all other facts and circumstances." And finally it concluded that "[u]nexplained flight by a person charged with crime is sufficient to raise an inference of guilt." That is, the departure was a circumstance which may tend to show a consciousness of guilt or which raises an inference of guilt, if unexplained. Of course, if the defendant's reason for leaving New Jersey was sufficiently credible or adequate to prevent or neutralize any tendency to indicate a consciousness of guilt or any inference of guilt, the departure could have no adverse influence against him. His reasons were laid fully before the jury and it was up to them to appraise *235 their substance as preventive or neutralizing agents. Under the circumstances, while it would have been more explicit and more desirable to conform the language used to that appearing in the Centalonza case, we find no plain error on this score which warrants reversal. State v. Picciotti, 12 N.J. 205 (1953).
Finally, it is contended that the cross-examination of a self-confessed accomplice of the defendant was unduly restricted. For example, complaint is made as to the propriety of sustaining the objection to the following question:
"Q. Isn't it a fact that the reason why you aren't now incriminating Mike Leonforte [a co-indictee], who is named to the police in your statement, is because you are afraid of Trigger Mike Leonforte?" (Insertion and emphasis ours)
The witness had denied that he ever knew the person named in the question. No such person was tried for the offense. There was no proof whatever or offer of proof that such a person was named in his statement to the police, and no offer of proof of any kind to support the suggestion that the witness was or might be afraid of Leonforte. In our judgment, the refusal to allow this question and the others referred to in the brief does not constitute reversible error. The jury was instructed fully as to the care and caution that should be exercised in scrutinizing the accomplice's testimony and on the whole record it cannot be said that the defendant suffered any prejudice as the result of the interrogation of the confessed associate.
The judgment is affirmed.